**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 0:24-cv-61050-RS**

ADAM FRIEDMAN**,**
individually and on behalf of all
others similarly situated,

Plaintiff,

**CLASS ACTION**

**JURY TRIAL DEMANDED**

v.

USHEALTH ADVISORS, LLC,

Defendant.
___________________________________/

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Adam Friedman bring this class action against Defendant USHealth Advisors, LLC, and allege as follows upon personal knowledge as to Plaintiff and Plaintiff' own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff' attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its sister companies' insurance products, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

3. Through this action, Plaintiff seek injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the

daily life of Plaintiff and the Class members. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

5. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each text in violation of the TCPA and the FTSA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present

6. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this District and Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the Southern District of Florida and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the Southern District of Florida.

**PARTIES**

7. Plaintiff is a natural person entitled to bring this action under the TCPA and FTSA, and a citizen and resident of Broward County, Florida.

8. Defendant is a domestic profit corporation with its principal address located at 300 Burnett Street, Suite 200, Fort Worth, Texas 76102. Defendant directs, markets, and provides its business activities throughout the United States, including but not limited to the state of Florida.

## FACTS

9. USHealth Group, Inc., owns a portfolio of insurance companies.

10. Defendant is a wholly-owned national sales and distribution subsidiary of USHealth Group, Inc.

11. Defendant sells individual health insurance plans and supplementary products on behalf of UnitedHealth Group, Inc.'s companies.

12. UnitedHealthcare, LLC is a subsidiary of UnitedHealth Group, Inc.

13. Defendant advertises and sells individual health insurance plans and supplementary products that are offered by UnitedHealthcare, LLC.

14. Defendant primarily advertises through a call center that cold calls consumer leads purchased by Defendant.

15. Defendant's call center agents send text messages to solicit consumers to purchase insurance plans and supplementary products that are offered by UnitedHealthcare, LLC.

16. Beginning in or around May of 2021, Defendant sent multiple telemarketing text messages to Plaintiff's cellular telephone number ending in 3760 (the "3760 Number") advertising and promoting UnitedHealthcare, LLC's insurance products:



17. Defendant continued to transmit its telemarketing messages to Plaintiff throughout 2022 and 2023:












18. Defendant's messages did not include opt-out instructions.

19. On or about March 7, 2023 Plaintiff to responded to Defendant with the word "Stop" in an attempt to opt-out of any further text message communications with Defendant:




20. Despite Plaintiff's unequivocal opt-out request using standard opt-out language, Defendant ignored Plaintiff's message and continued to bombard Plaintiff with more unwanted telemarketing text messages in November, 2023 through at least March, 2024:







21. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

22. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff personal insurance.

23. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted.

24. Plaintiff has no existing business relationship with Defendant.

25. Plaintiff is the subscriber and sole user of the 3760 Number and is financially responsible for phone service to the 3760 Number.

26. Plaintiff registered his 3760 Number with the national do-not-call registry on April 8, 2006, and has been registered at all times relevant to this action.

27. The text messages originated from various telephone numbers, including but not limited to: (561) 279-6130, (817) 380-9337, (954) 710-0688, (210) 981-6582, (954) 710-0944, (252) 201-8578, (830) 560-9651, and (321) 785-8611. These telephone numbers are owned and/or operated by Defendant and/or Defendant's call center agents.

28. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations, but Defendant continued to text message Plaintiff.

29. Defendant's refusal to honor Plaintiff' opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

30. Defendant's refusal to honor Plaintiff' opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

31. Defendant's refusal to honor Plaintiff' opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

32. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made and unequivocal opt-out request and his request was never processed; it was ignored by Defendant and its employees and Defendant escalated the volume of its text message solicitations.

33. Prior to the initiation of this lawsuit, Plaintiff's attorneys sent a letter to UnitedHealth Group, Inc., demanding, in part, an explanation as to why Plaintiff to continued to receive text messages after this opt-out instructions. Defendant's in-house counsel responded by denying liability under the TCPA because he claimed that an automatic telephone dialing system ("ATDS") was not used to text message Plaintiff. In other words, Defendant refused to provide any explanation as to its compliance with section 64.1200(d) or why Plaintiff's opt-out request was not included in an internal do-not-call list.

34. Defendant sent at least two solicitations after Plaintiff' initial opt-out requests.

35. Plaintiff was in Florida when he received Defendant's text message solicitations.

36. Plaintiff is the regular user of the telephone number that received the above text message solicitations.

37. Plaintiff utilizes his cellular telephone for personal purposes and the number is Plaintiff's residential telephone lines and primary means for reaching Plaintiff at home.

38. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

Defendant also has access to text message logs showing Plaintiff's and the Class members' inbound opt-out requests.

39. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

40. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

41. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

42. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

43. Moreover, within in Privacy Policy, Defendant admits that it utilizes "automated…means" to contact consumers on their telephones. www.uhc.com/content/dam/uhcdotcom/en/npp/OSPP-USHealthGroup-EN.pdf

44. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

45. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

46. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

47. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

48. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

49. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

50. Compliance with the FTSA will not result in Defendant having to cease its business operations.

51. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

52. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

53. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message them by responding with “stop” opt-out instructions.

54. Defendant’s text messages caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

55. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

56. Plaintiff bring this case on behalf of the Classes defined as follows:

> **TCPA "STOP" Class: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> FTSA "STOP" Class: **All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> FTSA Autodialer Class: **All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, from Defendant utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**
>
> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

57. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

58. Defendant and its employees or agents are excluded from the Class.

**NUMEROSITY**

59. Plaintiff is informed and believes that there are at least 50 individuals that fall within the Class definitions given Defendant's use of robotexts to solicit consumers, who are registered on the Do Not Call registry, and refusal to honor stop requests. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

60. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

61. There are numerous questions of law and fact common to members of each Class which predominate over any questions affecting only individual members. Among the questions of law and fact common are:

a. Whether Defendant sent text messages to Plaintiff and the Class members;

b. Whether Defendant continued to send text message solicitations after opt-out requests;

c. Whether Defendant utilized an autodialer to text message the Class members;

d. Whether Defendant failed to honor Plaintiff' and the Class members' opt-out requests;

e. Whether Defendant implemented the requisite training of personnel under section 64.1200;

f. Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;

g. Whether Defendant maintains the required policies and procedures under section 64.1200; and

h. Whether Defendant is liable for damages, and the amount of such damages.

62. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

TYPICALITY

63. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

PROTECTING THE INTERESTS OF THE CLASS MEMBERS

64. Plaintiff is a representative who will fully and adequately assert and protect the interests of each Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

65. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

66. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the TCPA "STOP" Class)**

67. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

68. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

69. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

70. Plaintiff and the Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

71. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

72. Plaintiff and the Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

73. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

74. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

75. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

76. Plaintiff and the Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

77. Plaintiff and the Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

78. Plaintiff and the Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

79. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

80. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

81. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA "STOP" Class)**

82. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

83. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

84. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

85. Defendant is a telephone solicitor as defined under the FTSA.

86. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

87. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

88. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

89. Defendant failed to honor Plaintiff's and the Class members' opt-out requests.

90. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

91. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

92. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 66 as if fully set forth herein.

93. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

94. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

95. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

96. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

97. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

98. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

99. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**Violation of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

100. Plaintiff repeats and re-alleges paragraphs 1 through 66 of this Complaint and incorporates them by reference herein.

101. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

103. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

104. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

105. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

106. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

107. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

b) An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

c) Such further and other relief as the Court deems necessary.

**JURY DEMAND**

Plaintiff hereby demand a trial by jury.

Dated: August 19, 2024

**HIRALDO P.A.**

*/s/ Manuel Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EISENBAND LAW PA**
Michael Eisenband
515 E Las Olas Blvd., Ste 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954-732-2792
*Counsel for Plaintiff and the Class*